UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

YVONNE TRACEY,

     Plaintiff,

     v.                              Case No.:  6:26-cv-00864-AGM-NWH

ORLANDO ENFORCEMENT
FIELD OFFICE DIRECTOR,
ACTING DIRECTOR-ICE TODD
LYONS, SECRETARY OF DHS
MARKWAYNE MULLIN, TODD
BLANCHE,

     Defendants.

## ORDER

Petitioner Yvonne Tracey is a Jamaican citizen previously convicted of a "particularly serious crime" that, under 8 U.S.C. § 1158(2)(A)(ii), is considered a danger to the community of the United States.  She is illegally present in the United States after previously being deported and she now petitions the Court for the issuance of a writ of habeas corpus that would bar the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") from requiring her to self-deport.

At the time of Ms. Tracey's conviction, she had been lawfully present in the United States since roughly 1972.  But after her conviction, her lawful status was revoked and she was deported to Jamaica.  After being deported, she returned to the United States illegally.  In 2018, DHS initiated removal proceedings against her again, which, to a limited extent, she fought successfully.  She succeeded in obtaining an order from an Immigration Judge in 2018 that deferred her removal to Jamaica on the basis of her testimony that private individuals in

Jamaica would likely harm or kill her.  The Immigration Judge found that Ms. Tracey credibly testified that private individuals harmed her in the past because she is homosexual.  Although the Immigration Judge denied her petition for asylum, denied her application for withholding of removal, denied her application for application of withholding under the Convention Against Torture, and ordered that Ms. Tracey be removed to Jamaica, the Immigration Judge nonetheless deferred her removal to Jamaica pursuant to the Convention Against Torture.  In that Order, the Immigration Judge informed Ms. Tracey that "her removal has been deferred only as to Jamaica" and "she may be removed at any time to another country where she is not likely to be tortured."  Although she was illegally present in the United States and had been informed that she could be removed at any time to another country, Ms. Tracey did not choose to self-deport and from that point forward, she was subject to routine monitoring by DHS and ICE.

On April 8, 2026, DHS informed Ms. Tracey that the time had come for her to self-deport to a third country of her choice.  She was fitted with an ankle monitor and directed to appear on April 21, 2026, with an airplane ticket with a departure date on or before May 1, 2026.

Ms. Tracey did not appear for her April 21, 2026, appointment as ordered.  Instead, she petitioned for a writ of habeas corpus (Doc. # 2), moved for a temporary injunction (*id.*), went to the emergency room and several medical appointments, and sent her lawyer to the DHS appointment.  She now claims that she is too medically fragile to be deported and attaches an April 21, 2026, letter from Margarita Carre, APRN, who opines that the ankle monitor should be removed because it is "contributing to a measurable exacerbation of [Ms.

2

Tracey's] arthritis." Although other records Ms. Tracey attached suggest that Ms. Tracey's has had similar symptoms prior to the ankle monitor, Margarita Carre "respectfully recommend[s]" that the ankle monitor be removed and that "alternative monitoring arrangements" be implemented. Ms. Tracey also attaches voluminous medical records that suggest that the news that she must remove herself to another country led Ms. Tracey to suffer major depressive disorder with severe psychotic symptoms including auditory and visual hallucinations of "dark figures and spirits," paranoia that she is being followed by people who want to harm her, as well as cardiac problems.[1]

Ms. Tracey alleges that DHS and ICE have significantly deprived her of her liberty such that she should be considered in custody for the purposes of 28 U.S.C. § 2241. She contends that her freedom is "severely restrict[ed]" and she has not been given "a meaningful opportunity to challenge the legality" of her removal. Ms. Tracey sought to stay her removal for medical reasons, but "DHS refused to accept or adjudicate the request unless [Ms. Tracey] first purchased an airline ticket."

In an amended petition (Doc. # 7; the "Petition"),[2] Ms. Tracey names as respondents the Field Office Director of Orlando Enforcement and Removal Operations; Todd Lyons, as the acting director of ICE; Todd Blanche, in his official capacity as the acting United States Attorney General; and Markwayne Mullin, in his official capacity as Secretary of DHS. She asks the Court to (1) enjoin Respondents from "effectuating or coercing" her removal until

---

[1] Ms. Tracey and her counsel are encouraged to not file medical records in the court file.
[2] On April 21, 2026, the Court denied Ms. Tracey's original petition (Doc. # 2) without prejudice for, among other reasons, failing to comply with the technical pleading requirements of the Federal Rules of Civil Procedure. (*See* Doc. # 6.) On April 27, 2026, Ms. Tracey filed an amended petition (Doc. # 7) and motion for injunctive relief (Doc. # 8), which are the operative filings discussed herein.

3

"Respondents comply with all applicable statutory, regulatory, and constitutional requirements," (2) order Respondents to cease enforcement of "any directives requiring [her] to arrange her own removal," (3) order "the immediate removal of [her] GPS ankle monitor," (4) "declare that Respondents actions . . . violate federal law and the Due Process Clause of the Fifth Amendment," and (5) award attorney's fees.

In the Motion for Temporary Restraining Order (Doc. # 8; the "Motion"), Ms. Tracey requests the issuance of a temporary restraining order (1) staying her removal pending a hearing, (2) setting a hearing for a preliminary injunction, and (3) issuing an order to show cause why the Court should not enter a preliminary injunction staying her removal.

## I.    JURISDICTION

In Article III of the United States Constitution, the judicial power of the United States is vested in "one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."  U.S. Const. art. III, § 1.  In addition to being the creator of lower federal courts, *see* 28 U.S.C. § 132, Congress is also the grantor of those courts' power to act.  In 28 U.S.C. § 2241, Congress gave United States District Courts the power to issue writs of habeas corpus, but it also specified the limitations on district courts' power to issue the writ.  *See* 28 U.S.C. § 2241(e)(1).

Since "[f]ederal courts are courts of limited jurisdiction," they "are required to inquire into their jurisdiction at the earliest possible point in the proceeding."  *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1279–80 (11th Cir. 2001).  The burden of proving that a lower federal court has jurisdiction rests on the party who seeks to invoke jurisdiction.  *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).  It is "well settled that a federal court is

4

obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Ultimately, if a district court acts without subject matter jurisdiction, "it violates the fundamental constitutional precept of limited federal power." *Id.* at 409–10.

Doubt as to the existence of its jurisdiction may arise from a trial court's examination of the face of the pleading and the attached exhibits. *See McElmurray v. Consolidated Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). If the court determines that the face of the petition fails to allege a sufficient basis for subject matter jurisdiction, dismissal is appropriate. *Id.* A district court is required to consider its jurisdiction over a petitioner's habeas corpus claims before ruling on the merits. *See Sampson v. Warden, FCC Coleman-USP I*, 605 F. App'x 861, 863 (11th Cir. 2015).

Here, this Court plainly lacks jurisdiction to grant Ms. Tracey the relief she requests. Although, on the one hand, Congress undeniably granted district courts the power to issue the writ of habeas corpus, on the other hand Congress expressly deprived district courts of the power to issue the writ in certain immigration contexts. Specifically, Congress plainly stated that "no court shall have jurisdiction to hear *any cause or claim* by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). The Eleventh Circuit has already emphasized that, when it comes to section 1252(g), "[o]ne word in particular stands out: 'any.'" *Camarena v. Dir., Immigration & Customs Enforcement*, 988 F.3d 1268, 1273 (11th Cir. 2021).

5

Ms. Tracey contends that the fact that she previously received protection under the Convention Against Torture ("CAT") means that she cannot be removed to an unidentified third country without giving her a meaningful opportunity to be heard. But this is simply false, and one need look no further than the exhibits attached to the Petition to see it. Exhibit 5 is the July 17, 2018, decision by the San Francisco, California Immigration Judge who deferred Ms. Tracey's removal to Jamaica under CAT on the basis that he found Ms. Tracey's concerns credible based on her status as a homosexual. After denying her application for asylum, denying her application for withholding of removal under CAT and the Immigration and Nationality Act ("INA") section 241(b)(3), ordering that she be removed to Jamaica, and finally deferring her removal under CAT, the Immigration Judge specifically informed Ms. Tracey that "her removal has been deferred only as to Jamaica and that she may be removed *at any time* to another country where she is not likely to be tortured." (See Doc. # 7, Ex. 5 at 6) (emphasis added). Moreover, the Immigration Judge informed Ms. Tracey that deferral of removal "[d]oes not confer any lawful or permanent immigration status in the United States"; "[w]ill not necessarily result in release from custody"; and "[i]s effective only until terminated."

In short, no matter how Ms. Tracey dresses it up, this is a "cause or claim by or on behalf of an[] alien arising from the decision or action by the Attorney General to . . . execute [a] removal order[]," a matter over which Congress has given this Court no jurisdiction. 8 U.S.C. § 1252(g). Like the petitioner in *Camarena*, Ms. Tracey "runs headlong into § 1252(g)." *Id.* at 1273. As both a matter of fact and a matter of law, Ms. Tracey's argument that the Immigration Judge's finding that her removal to Jamaica should be deferred under CAT does

not entitle her to special, additional opportunities to argue that she should not be deported or removed.

## II.    CONSTITUTIONALITY

According to Ms. Tracey, if Congress deprived this Court of jurisdiction to hear her claims, then the jurisdiction-stripping statute amounts to an unconstitutional deprivation of her due process rights.  Further, she claims that "[t]he Suspension Clause saves this Court's jurisdiction and ability to hear [her] claims." (Doc. # 7 at 6.)  But for the reasons that follow, there is no merit to this argument.[3]

While the Constitution states that the "privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public safety may require it," U.S. Const. art. I, § 9, cl. 2, "[t]he writ of habeas corpus known to the Framers was quite different from that which exists today." *Felker v. Turpin*, 518 U.S. 651, 663 (1996).  What this means is that if a writ was not available as the writ was understood in 1789, then unavailability of it today does not violate the Suspension Clause. *Jones v. Hendrix*, 8 F.4th 683, 689–90 (8th Cir. 2021) ("Further, considering that the Suspension Clause refers to a specific legal instrument that existed at the time, we think there is good reason to adhere closely to the 1789 meaning.").

In a case that Ms. Tracey did not discuss in her thirty-five-page brief, the Supreme Court of the United States expressly rejected the precise argument that Ms. Tracey makes here, holding that neither the Suspension nor the Due Process Clauses are violated by a statutory

---

[3] And even if there had been, there is a process by which the constitutionality of a statute can be challenged. Ms. Tracey sought a determination of constitutionality outside that process.

restriction on the ability of an alien to obtain review under the federal habeas statute. *See Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 132 (2020).  Moreover, it warned lower federal courts that "[h]olding that an Act of Congress unconstitutionally suspends the writ of habeas corpus is momentous." *Id.*  In a brief meticulous enough to cite to non-binding orders from inferior courts in the Western District of Oregon and the Southern District of New York, it is surprising that Ms. Tracey did not come across this binding authority from the highest court in the United States.

In *Thuraissigiam*, the petitioner was a Sri Lankan national who crossed the southern border without inspection or an entry document, was stopped, and was detained for expedited removal. *Id.* at 114.  He claimed a fear of returning to Sri Lanka and the asylum officer credited his account that he had been assaulted but determined that any fear he had of persecution was not credible. *Id.*  The supervising officer signed the removal order, an immigration judge affirmed, and before Mr. Thuraissigiam could be removed, he filed a federal habeas petition, alleging that immigration officials deprived him of a meaningful opportunity to establish his claims. *Id.*  He requested issuance of a writ directing the Department "to provide [him] a new opportunity to apply for asylum and other applicable forms of relief." *Id.* at 115.

The trial court dismissed Mr. Thuraissigiam's petition, concluding that sections 1252(a)(2) and (e)(2) stripped it of jurisdiction. *Id.* at 115.  Mr. Thuraissigiam appealed, arguing that section 1252 was an unconstitutional suspension of the writ and a violation of due process. *Id.* at 107.  The Court of Appeals for the Ninth Circuit reversed, concluding that the Supreme Court's Suspension Clause precedent required "reference to the writ as it stood in 1789." *Id.* at 115.  "[W]ithout citing any pre-1789 case about the scope of the writ," the Ninth Circuit

8

held that § 1252(e)(2) violate[d] the Suspension Clause and Mr. Thuraissigiam's due process rights. *Id.* Petitioners across the Ninth Circuit then used the case to obtain review outside the scope of § 1252(e)(2), "and petitioners elsewhere [] attempted to follow suit." *Id.* The Supreme Court granted the supervisory writ of certiorari. *Id.* at 116.

The Supreme Court concluded that "neither respondent nor his amici have shown that the writ of habeas corpus was understood at the time of the adoption of the Constitution to permit a petitioner to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result. The writ simply provided a means of contesting the lawfulness of restraint and securing release." *Id.* at 117. The Court observed that "Blackstone's Commentaries—usually a 'satisfactory exposition of the common law of England,'" made clear that the writ was meant to "remov[e] the injury of unjust and illegal confinement." *Id.* (quoting *Schick v. United States*, 195 U.S. 65, 69 (1904)). The fact that Mr. Thuraissigiam sought vacatur of a removal order and an order directing the Department "to provide him with a new . . . opportunity to apply for asylum and other relief from removal" "doom[ed his] Suspension Clause argument." *Id.* at 117–18.

The Court further noted that not only did Mr. Thuraissigiam fail to seek release, he did not (because, the Court noted, he could not) dispute that his confinement was lawful. *Id.* at 118. He was apprehended "in the very act of attempting to enter this country," he was inadmissible because he lacked an entry document, and "simply releasing him would not provide the right to stay in the country" that his petition ultimately sought because "[w]ithout a change in status, he would remain subject to arrest, detention, and removal." *Id.* at 118–19.

Both Mr. Thuraissigiam and *amici* supporting his position did "considerable research into the use of habeas before and around the time of the adoption of the Constitution, but they have not unearthed evidence that habeas was then used to obtain . . . authorization for an alien to remain in a country other than his own or to obtain administrative or judicial review leading to that result." *Id.* at 120. In the founding-era cases cited by Mr. Thuraissigiam and the *amici*, the Court recognized that none of them involved the court ordering "anything more than simple release from custody," *id.* at 124, and to the extent that the released petitioners "were able to remain in the United States as a collateral consequence of release . . . that was due not to the writs ordering their release, but to U.S. immigration law or the lack thereof." *Id.*

The Supreme Court observed that "[t]he relief that a habeas court may order and the collateral consequences of that relief are two entirely different things." *Id.* While release might, for example, "enable a qualified surgeon to operate on a patient; a licensed architect may have the opportunity to design a bridge; and a qualified pilot may be able to fly a passenger jet," the writ "could not be used to compel an applicant to be afforded those opportunities or as a means to obtain a license as a surgeon, architect, or pilot." *Id.* at 125. "Similarly, while the release of an alien may give the alien the opportunity to remain in the country if the immigration laws permit, we have no evidence that the writ as it was known in 1789 could be used to require that aliens be permitted to remain in a country other than their own, or as a means to seek that permission." *Id.* The Supreme Court concluded that Congress's restrictions on the ability of an alien to obtain review under the habeas statute was not an unconstitutional violation of either the Suspension Clause or the Due Process Clause. The

10

Court held that Mr. Thuraissigiam's "Suspension Clause argument fails because it would extend the writ of habeas corpus far beyond its scope 'when the Constitution was drafted and ratified,'" *id.* at 107 (citing *Boumediene v. Bush*, 553 U.S. 723, 746 (2008)), and the use of the writ as Mr. Thuraissigiam sought in that case "would have been unrecognizable" in the founding era. *Id.* at 107, 125. While noting that the writ can be invoked by an alien in the country who was held in custody pending deportation, the Court held that the constitutional prohibition on suspension of the writ does not extend to modern evolutions of the writ, which go far beyond the core as it was understood at the Founding. *Id.* at 107.

In, *Thuraissigiam*, the Supreme Court also rejected the idea that an alien's due process rights are violated by an immigration statute that precludes judicial review of an immigration court's rulings. *Id.* at 138. It observed that "[i]n 1892, the Court wrote that as to 'foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law,' 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" *Id.* at 138 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)). Consistent with this, the Court in *U.S. ex rel. Knauff v. Shaughnessy* held that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." 338 U.S. 537, 544 (1950). Further, the *Knauff* Court observed that "[w]hatever the rule may be concerning deportation of persons who have gained entry into the United States, it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *Id.* at 543.

11

The *Thuraissigiam* Court explicitly rejected Mr. Thuraissigiam's argument that he was entitled to a heightened degree of due process "because he was not taken into custody the instant he attempted to enter the country (as would have been the case had he arrived at a lawful port of entry)." 591 U.S. at 139. Emphasizing that (1) "the power to admit or exclude aliens is a sovereign prerogative," (2) "the political department of the government [has] plenary authority to decide which aliens to admit," and (3) "a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted," the Court observed that Mr. Thuraissigiam's due process argument "disregards the reason for our century-old rule regarding the due process rights of an alien seeking initial entry." *Id.* (cleaned up). "[A]n alien who tries to enter the country illegally is treated as an 'applicant for admission'" under 8 U.S.C. § 1225(a)(1) and "an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry,'" such that an alien can be allowed to "undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." *Id.* at 140 (quotation citation omitted).

The Supreme Court concluded that:

> For these reasons, an alien in respondent's position has only those rights regarding admission that Congress has provided by statute. In respondent's case, Congress provided the right to a "determin[ation]" whether he had "a significant possibility" of "establish[ing] eligibility for asylum," and he was given that right. §§ 1225(b)(1)(B)(ii), (v). Because the Due Process Clause provides nothing more, it does not require review of that determination or how it was made. As applied here, therefore, § 1252(e)(2) does not violate due process.

*Id.*

12

Applying *Thuraissigiam* to this case, it is clear that Ms. Tracey's Suspension Clause argument has no merit. The central inquiry is whether the writ of habeas corpus, absent suspension, remains available in substantially the same form understood in 1789. *See id.* at 116. The "traditional function of the writ is to secure release from illegal custody," *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), and the Supreme Court has repeatedly stressed that claims "far outside the 'core' of habeas may not be pursued through habeas." *Thuraissigiam*, 591 U.S. at 119.

Like the petitioner in *Thuraissigiam,* Ms. Tracey is a removable alien who has been afforded a hearing before an Immigration Judge, which resulted in a reasoned decision in 2018. Although she once had lawful status in the United States, she committed an offense against the United States that was categorized as a "particularly serious crime" considered to be a danger to the community of the United States. Her lawful status was revoked, she was deported, and she returned illegally only to promptly be told she would again be deported. She was heard before an immigration court in 2018, since 2018 she has been on notice that her petition was denied, she was subject to deportation, and she could be removed at any time to a third country. Instead of the "simple release" relief that is the core of habeas, Ms. Tracey seeks to "obtain additional administrative review" through habeas and, ultimately, "to obtain authorization to stay in this country." *See id.* at 107. That relief is without historical analogue and "would have been unrecognizable" at the time the Constitution was drafted and ratified. *See id.*

There is also no merit to Ms. Tracey's due process argument. Again, Ms. Tracey is illegally present in the United States and was removed once already after her lawful status was

13

revoked following her criminal conviction. She has been subject to an order of removal since 2018. The Immigration Judge denied her petition for asylum, denied her application for withholding of removal under the INA, denied her application for withholding under the Convention Against Torture, and ordered that Ms. Tracey be removed to Jamaica. While the Immigration Judge nonetheless deferred her removal to Jamaica pursuant to the Convention Against Torture, in doing so he explicitly informed Ms. Tracey that "her removal has been deferred only as to Jamaica" and "she may be removed at any time to another country where she is not likely to be tortured."

The "power to admit or exclude aliens is a sovereign prerogative," "a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Thuraissigiam,* 591 U.S. at 139. Ms. Tracey's continued presence in the United States is by the operation of "[e]xecutive[] discretion" and she has been afforded those procedures determining her removability. *See Thuraissigiam*, 591 U.S. at 112. She was informed that she could be removed "at any time to another country," and the fact that she did not choose to remove herself to a third country of her choice has resulted in her present circumstances. She has received the process authorized by Congress, and, as to her, that is due process. Given that it is not unconstitutional for Congress to deprive this Court of jurisdiction to review her removal order, the Petition must be denied.

## III.    ALTERNATIVE BASES FOR DENIAL

Although the Petition is due to be denied on its merits, it was also due to be denied for failure to comply with applicable pleading standards. A petition for a writ of habeas corpus is

14

governed by pleading standards set out in 28 U.S.C. § 2242, the Federal Rules of Civil Procedure, and Rules Governing Section 2254 Cases in the United States District Courts, Pub. L. 94426 (the "Habeas Rules"). While Rule 1(a) specifies that the Habeas Rules govern a petition filed under 28 U.S.C. § 2254, Rule 1(b) makes clear that a "district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)." The Habeas Rules are consistent with the statutory requirements imposed by 28 U.S.C. § 2242, including that an "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf" and "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known."

Like 28 U.S.C. § 2242, Rule 2(c) of the Habeas Rules requires that a petition "specify all the grounds for relief available to the petitioner," "state the facts supporting each ground," and "be signed under penalty of perjury by the petitioner or a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." Habeas Rule 2(c)(1), (2), (5).

Habeas Rule 4 requires that the district court "must dismiss the petition and direct the clerk to notify the petitioner" if the district court determines that "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]" And "[i]n every case," Rule 4 requires that the clerk serve a copy of the petition and any order "on the respondent[s]."

"A prime purpose" of Rule 2(c)'s demand that petitioners plead with particularity is to "assist the district court" in its duties under Rule 4. *Mayle v. Felix*, 545 U.S. 644, 656 (2005).

As between Rule 8 of the Federal Rules of Civil Procedure and Rule 2(c) of the Habeas Rules, "Habeas Corpus Rule 2(c) is more demanding." *Id.* at 655.

Ms. Tracey's Petition failed to comply with the requirements of Habeas Rule 4 and 28 U.S.C. § 2242, including the requirement that it be both "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." To "verify" something means to "prove [it] to be true; to confirm or establish the truth or truthfulness of; to authenticate"; to "confirm or substantiate by oath or affidavit; to swear to the truth of." *Verify*, Black's Law Dictionary (12th ed. 2024). Here, counsel for Ms. Tracey signed and verified the Petition "to the best of her knowledge," without explaining why Ms. Tracey was unavailable to verify the truth and accuracy of the allegations herself. (Doc. # 7 at 34.)

As other jurisdictions have acknowledged, "[i]t is settled that a verification wherein affiant affirms merely that certain facts are, 'true to the best of his knowledge, information and belief,' means nothing 'more than the affiant *believes* the allegations of the bill to be true, though he has neither knowledge nor information of their truth,' and, 'an affidavit of belief in their truth simply amounts to nothing.'" *Water & Sewer Com'rs of City of Mobile v. Spriggs*, 146 So. 2d 872, 873 (Ala. 1962) (quotation citation omitted). In this instance, the form of the verification is clearly not appropriate given the character and objectives of this proceeding.

The Petition also failed to comply with the Federal Rules of Civil Procedure. Under Rule 8, a pleading must contain:

(1)     a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2)     a short and plain statement of the claim showing that the pleader is entitled to relief; and

16

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). The allegations must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). In addition, "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Failure to comply with pleading requirements subjects a pleading to dismissal. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has recognized four types of complaints that fail to comply with the Federal Rules' pleading requirements. *Id.* at 1321. "The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second type is one that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. The third type fails to "separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322–23. The fourth type "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Although "it is much easier in the short term to permit" non-compliant pleadings "instead of intervening *sua sponte* to narrow the issues . . . district courts have the power and

17

the duty to define the issues at the earliest stages of litigation" and it is appropriate to "quickly demand repleader" to avoid being "drowned in an uncharted sea," a "massive record," and "loose pleadings." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

Here, the Petition impermissibly bundles the Respondents in such a way that it is impossible for the Court and, more importantly, the Respondents, to reasonably discern what conduct is at issue and who Ms. Tracey alleges did what. For example, the Petition alleges Ms. Tracey is "under the supervision and authority of Respondents," the "Respondents have imposed a coercive directive," and that "Respondents have failed to provide procedural safeguards," among many other claims lumping all the Respondents together. (See Doc. # 7 ¶¶ 6, 63, 64.) The Petition's vagueness undermines the Court's ability to justly adjudicate this matter because it cannot be determined to whom the writ would properly be issued, who properly would be enjoined, and why.

The Petition contains an additional pleading defect. In each of its three counts, Ms. Tracey "repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein." (*Id.* ¶¶ 80, 87, 101.) The net effect is that each claim alleges facts that are not directed toward the proper Respondent, nor pertinent to each claim, and the final count is rendered a "combination of the entire complaint." *Weiland*, 792 F.3d at 1321. And while factual allegations contained within the "Parties" and "Statement of Facts" sections of the Petition help clarify the content of each count alleged, this defect obscures the "grounds upon which each claim rests." *See id.* at 1323.

18

While the pleading standard of Rule 8 does not require "detailed factual allegations," it demands more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Given the constitutional issues and separation of powers concerns implicated by the Petition, the Court is "unwilling to address and decide serious constitutional issues" on a pleading that fails to comply with the Federal Rules of Civil Procedure. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

## IV.    DENIAL OF MOTION NECESSARY

"Absent a properly-filed complaint, a court lacks power to issue preliminary injunctive relief." *Powell v. Rios*, 241 F. App'x 500, 505 n.4 (10th Cir. 2007). A complaint is required because "injunctive relief must relate in some fashion to the relief requested in the complaint." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005). Because the Petition is dismissed, the Motion must be denied.

## V.    CONCLUSION

For the foregoing reasons, Ms. Tracey's Petition must be dismissed, and the Motion denied.

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Doc. # 7) is **DISMISSED**;

2. The Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Stay of Removal (Doc. # 8) is **DENIED**; and

3. The Clerk is directed to **SERVE** a copy of the Petition and this Order on Ms.

   Tracey and Respondents, pursuant to Rule 4 of the Habeas Rules.

   **DONE** and **ORDERED** in Chambers in Orlando, Florida, on May 13, 2026.

ANNE-LEIGH GAYLORD MOE
UNITED STATES DISTRICT JUDGE

**Copies Furnished To:**
Petitioner
Respondents

20